UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

CALVIN E. ANDERSON, )
                                             )
       *Plaintiff*,                   )    No. 1:16-cv-0139-SKL
                                             )
v.                                              )
                                           )
                                           )
CAROLYN W. COLVIN,          )
Commissioner of Social Security,    )
                                           )
       *Defendant*.            )

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Calvin E. Anderson ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party has moved for judgment on the administrative record and summary judgment [Docs. 15 & 19] and has filed a memorandum in support of their respective motions [Docs. 16 & 20]. This matter is now ripe. For the reasons stated below, Plaintiff's motion for judgment on the pleadings [Doc. 15] will be **DENIED** and the Commissioner's motion for summary judgment [Doc. 19] will be **GRANTED**; and the decision of the Commissioner will be **AFFIRMED.**

## I.     ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his applications for DIB and SSI on November 13, 2012, alleging disability beginning May 15, 2009 (Transcript [Doc. 11] ("Tr.") 14, 165-171, 172-177). Plaintiff later amended the alleged onset date ("AOD") to March 26, 2010 (Tr. 32). Plaintiff's claims were

denied initially and upon reconsideration and he requested a hearing (Tr. 104-110, 113-14, 115-17, 118-120, 121-22). The administrative law judge ("ALJ") held a hearing on July 31, 2014, during which Plaintiff was represented by an attorney (Tr. 31-51). The ALJ issued a decision on January 5, 2015, finding that Plaintiff was not under a "disability" as defined in the Social Security Act ("Act"). After Plaintiff requested review of the ALJ's unfavorable decision, the Appeals Council denied Plaintiff's request, and the ALJ's decision became the final, appealable decision of the Commissioner (Tr. 1-4, 8-10). Plaintiff timely filed the instant action [Doc. 2].

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born September 26, 1960. He alleges disability beginning at age 49 years and six months old, due to a combination of severe impairments rendering him unable to perform any work at the substantial gainful activity ("SGA") level (Tr. 235). Plaintiff also alleges functional illiteracy (Tr. 35, 37, 38). Plaintiff was 54 years old on the date of his hearing (Tr. 31, 33). He stopped attending school in either the sixth, seventh, or eighth grade (Tr. 33, 201, 296, 289). In the past, he primarily worked in construction (Tr. 34, 298) but also worked as a dishwasher (Tr. 298).

### B. Medical Records

The administrative record contains extensive medical records that have been summarized by the parties and the ALJ and need not be summarized again herein. Only the portions of Plaintiff's medical records relevant to the parties' arguments will be addressed within the respective sections of the analysis below, but the relevant records have been reviewed.

2

### C.     Hearing Testimony

At the November 24, 2014 hearing, Plaintiff testified (Tr. 33-43, 49-50).  In addition, Anne Darnell, a vocational expert ("VE") testified (Tr. 43-49, 50).  While the transcript of the testimony at the hearing has been carefully reviewed, it is not necessary to summarize the testimony herein.  As needed, portions of the testimony will be addressed within the respective sections of the analysis below.

## III.     ELIGIBILITY AND THE ALJ'S FINDINGS

### A.     Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'"  *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)).  A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)).  The Social Security Administration ("SSA" or "Agency") determines eligibility for disability benefits by following a five-step process.  20 C.F.R. § 404.1520(a)(4)(i-v).  The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that

significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009).  The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010).

**B.    The ALJ's Findings**

Applying the five-step process, the ALJ made the following findings (Tr. 16-25).  At step one, the ALJ found the claimant has not engaged in SGA since March 26, 2010, the amended alleged onset date (Tr. 16).  At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, degenerative joint disease of the right knee, obesity, reduced intellectual functioning (estimated), and depression (Tr. 16). The ALJ found Plaintiff's hypertension and diabetes mellitus were not severe as they both could be controlled with medication, records showed no evidence of any end organ damage from either alleged impairment, and "have not been shown to more than minimally affect his functioning" (Tr. 17).  As to Plaintiff's diabetes, the ALJ determined "treating sources have indicated his glucose level has consistently been in a normal range" (Tr. 17).

At step three, the ALJ found Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

4

CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)" (Tr. 17). The ALJ next determined Plaintiff had the RFC to perform:

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) allowing a sit/stand option at about 30 minute to one hour intervals; no overhead reaching with the right arm; occasional balancing, stooping, kneeling, crouching and crawling; involving simple, routine, repetitive job tasks not requiring reading and writing; he must have only occasional contact with the public, co-workers and supervisors; and infrequent work changes.

(Tr. 20).

At step four, the ALJ found Plaintiff is unable to perform any past relevant work (Tr. 23). At step five, taking into consideration the claimant's age, education, work experience and RFC, and after utilizing the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, app. 2, as a framework for his decision and considering the testimony of the VE, the ALJ found Plaintiff was capable of performing jobs that exist in significant numbers in the national economy such as a hand packager, garment folder, and stock ticket marker (Tr. 24). The ALJ also noted that the VE identified the job of food assembler, which requires an ability to read and write at a rudimentary level (Tr. 24). These findings led to the ALJ's determination that Plaintiff was not under a disability at any time from March 26, 2010 through the date of the ALJ's decision (Tr. 25).

## IV. ANALYSIS

Plaintiff alleges the ALJ erred (1) by failing to evaluate fully or sufficiently Plaintiff's level of intellectual functioning with respect to the determined RFC; (2) by incorrectly identifying Plaintiff's past relevant work, which does not correspond with Medical Vocational Rule 202.09; and (3) by failing to explain why he decided to evaluate the case using Plaintiff's chronological age (18-49, Younger Individual), instead of following Agency guidelines to address certain vocational factors in a borderline age situation [Doc. 16 at Page ID # 695-96].

Overall, Plaintiff argues the ALJ's denial of disability benefits is not supported by substantial evidence [Doc. 16 at Page ID #695]. The Commissioner disputes each of these allegations [Doc. 20].

### A. Standard of Review

A court must affirm unless the Commissioner's decision rests on an incorrect legal standard or is not supported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citations omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court, however, may not consider any evidence that was not before the ALJ for purposes of substantial

evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B.  Whether the ALJ Erred by Declining to Order IQ Testing

The ALJ determined Plaintiff does not qualify as having an intellectual disability under 12.05C, 12.02, or 12.04 (Tr. 17-18). Plaintiff argues "the ALJ abrogated his duty to fully develop the medical evidence of record" on the issue of Plaintiff's intellectual functioning [Doc. 16 at Page ID #699]. Specifically, Plaintiff avers that the ALJ erred by "discount[ing] clear evidence of a disabling intellectual impairment" and failing "to request further empirical, standardized testing that could conclusively explain these symptoms and signs" [*id.*].

Plaintiff testified that he left school after the sixth or seventh grade (Tr. 33). Plaintiff reported that he received special education services in school (Tr. 18, 296). At the time of the hearing, Plaintiff "alleged functional illiteracy, as he submitted he effectively cannot read or write, other than his name, street signs or certain consumer brand labels." [Doc. 16 at Page ID #697 (citing Tr. 35, 37, 38)]. Citing *Heckler v. Campbell*, 461 U.S. 458, 470 (1983), Plaintiff states that "[a]n ALJ has a duty to develop the record because of the nonadversarial nature of Social Security benefits proceedings," and to develop a full and fair record in the current case,

"the ALJ should have ordered further psychological testing that included formal IQ testing" [Doc. 16 at Page ID #700-01].

Dee M. Langford, Ed.D., H.S.P., evaluated Plaintiff on January 23, 2013 (Tr. 295-99). From that psychological consultative evaluation, Dr. Langford concluded that Plaintiff "may fall into the extremely low range of intellectual functioning, though no formal intellectual testing was done at this time" (Tr. 297-98). Dr. Langford also noted that Plaintiff "showed evidence of moderate impairment in his short-term memory," "in his ability to sustain concentration," and "in his long-term and remote memory functioning." (Tr. 297-98).

The regulations set the standard for an "intellectual disorder" at 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.[1] Listing 12.05C, current when the ALJ entered his decision,[2] provides:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>           *        *        *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

---

[1] The SSA modified its regulations effective September 3, 2013, to change the terminology in Listing 12.05 from "mental retardation" to "intellectual disability." See 78 Fed. Reg. 46,499-01 (Aug. 1, 2013). The change does not affect how a claim is evaluated under Listing 12.05. See *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 536 n.1 (6th Cir. 2014).

[2] The regulation for Listing 12.05 has been updated. *See* 81 Fed. Reg. 66,138-01 (Sept. 26, 2016). The current version of 12.05 now has only two paragraphs, A and B. *See Bryant v. Berryhill*, No. 7:16-CV-36-D, 2017 WL 914645, at *4 (E.D. N.C. Feb. 17, 2017), *report and recommendation adopted*, No. 7:16-CV-36-D, 2017 WL 908190 (E.D. N.C. Mar. 7, 2017). Neither party raises this as an issue. Because the current version of Listing 12.05 continues to require evidence of deficits in adaptive functioning, the analysis provided herein is not affected by the update to the regulation.

20 C.F.R. Pt. 404, Subpt. P, App'x. 1 § 12.05.

To qualify for Listing 12.05C, a claimant must: (1) have a valid IQ score of 60 to 70, (2) have other "severe" impairments, *and* (3) meet the "diagnostic description" found in the introductory paragraph of Listing 12.05C. *Foster*, 279 F.3d at 354-55. "[T]he diagnostic description of Listing 12.05C contains three separate requirements." *Petty v. Astrue*, No. 2:12-CV-324, 2013 WL 3466851, at *7 (E.D. Tenn. July 10, 2013) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05). Those require a claimant to prove: "(1) he suffers from 'significantly subaverage general intellectual functioning,' *(2) he suffers from 'deficits in adaptive functioning,' and* (3) these deficits in adaptive functioning initially manifested before age 22." *Id.* (citing *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 872 (6th Cir. 2003)) (emphasis added).

Here, the ALJ found "the claimant has no adaptive functioning deficits" (Tr. 17). "The adaptive skills prong evaluates a claimant's effectiveness in areas such as social skills, communication skills, and daily-living skills." *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 677 (6th Cir. 2009); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(H)(3)(a). Previously, this Court has indicated that such deficits must be more than "potential" or "moderate" in order for a claimant to qualify as having an intellectual disability. *Petty,* 2013 WL 3466851, at *7 (citing *Payne v. Comm'r of Soc. Sec.*, No. 3:07-CV-251, 2008 WL 2894482, at *4 (E.D. Tenn. Jul. 23, 2008)). "The Supreme Court, quoting from the Manual of Mental Disorders, described adaptive deficits as 'a person's effectiveness in areas such as social skills, communication, daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group.' " *Id.* (quoting *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993)). Further, the Sixth Circuit has noted that "[t]he

9

American Psychiatric Association defines adaptive-skills limitations as '[c]oncurrent deficits or impairments . . . in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.' " *Hayes*, 357 F. App'x at 677 (quoting DSM–IV–TR at 49).

Regarding Plaintiff's intellectual limitations under 12.05C, the ALJ found as follows:

> Regarding 12.05C, I note the psychological consultative examiner diagnosed mild mental retardation (Ex. 4F p. 5 [Tr. 299]).[3] However, there was no intelligence testing performed to support this diagnosis. It appears the consultative examiner based his diagnosis on the claimant's self-reported limitations including problems with short-term memory and concentration abilities (Ex. 4F p.3 [Tr. 297]). This examiner noted the claimant exhibited intellectual deficiencies; however, he also noted the claimant "had a tendency to give up easily" (Ex. 4F p.4 [Tr. 298]). *Even assuming listing level IQ scores, the claimant has no adaptive functioning deficits.* The claimant has reported the ability to make purchases, manage money and has performed full-time unskilled work for at least 15 years. The claimant testified he possessed a driver's license until losing it due to multiple DUI's. Medical records indicate the claimant manages his own medications (Ex. 9F and 10F). The claimant's mental health treatment records do not contain the diagnosis of mild mental retardation (Ex. 6F, 7F and 10F). Therefore, 12.05C is clearly not met by substantial evidence. Given the lack of deficits [in] adaptive functioning, I

---

[3] To clarify, page 5 of Exhibit 4F, Dr. Langford's psychological evaluation, presented in part:

Diagnostic Impression:

| Axis I: | | 296.33 | Major Depressive Disorder |
|---------|------|--------|---------------------------|
| Axis II: | R/O | 317 | Mild Mental Retardation |

\*          \*          \*

(Tr. 299). Later in the same decision, the ALJ stated that that Dr. Langford "diagnosed a major depressive disorder and *rule out mild mental retardation* (pp. 4&5)" (Tr. 18) (emphasis added). A diagnosis preceded by "rule out" indicates uncertainty. *Cunningham v. Jones*, 274 S.W.3d 659, 664 (Tenn. Ct. App. 2008); *see also Gough v. Metro. Life Ins. Co.*, No. 3:03-0158, 2003 WL 23411993, at \*11 (M.D. Tenn. Nov. 21, 2003) ("R/O" is a "common clinical abbreviation" that indicates a lack of "sufficient information to diagnose . . . [a] condition at the time of [the] report.").

10

find that further mental evaluation with IQ testing is not warranted.

(Tr. 17) (footnote and emphasis added). Because the ALJ found substantial evidence that Plaintiff "has no adaptive functioning deficits," then Plaintiff would not qualify for disability under 12.05C regardless of the results of an IQ test. As a result, **I FIND** the evidence supports the ALJ's conclusion that, as to 12.05C, "further mental evaluation with IQ testing is not warranted" (Tr. 17).

The ALJ also found "[t]he severity of the claimant's mental impairments does not meet or medically equal the criteria of listings 12.02 or 12.04." (Tr. 18). The ALJ based that determination on whether the evidence satisfies the "paragraph B" or "paragraph C" criteria[4] (Tr. 18-20). In considering "paragraph B," the ALJ consulted Dr. Langford's psychological consultative evaluation (Tr. 297), along with the Plaintiff's progress notes, treatment records, and disability reports (Tr. 18 (citing Ex. 6F, 7F, 9F, 10F, 1E, 3E, 4E, 6E, 8E)). The ALJ also noted Dr. Langford's estimation that the Plaintiff may have an extremely low range of intellectual functioning, diagnosis of a major depressive disorder, and rule out mild mental retardation (Tr. 18, 298-99).

Regarding the "paragraph B" criteria, the ALJ found Plaintiff has only a "moderate restriction" in his activities of daily living, reiterating that he admitted cleaning the house, preparing some meals, washing dishes, vacuuming, and sweeping (Tr. 18, 207, 209, 298). The ALJ found that based on Plaintiff's admissions, "with moderate restriction" Plaintiff is able to "independently perform[] activities of daily living and perform[] moderate physical activities" (Tr. 18-19). Plaintiff experienced "moderate difficulties" with social functioning, the ALJ concluded, noting that Plaintiff "admitted shopping for groceries, attending church, and visiting

---

[4] *See* 20 C.F.R., Pt. 404, Supt. P, App'x 1, adult mental disorder listings 12.02 and Organic Mental Disorders and 12.04 Affective Disorders.

with others" (Tr. 19, 210, 211). Similarly, the ALJ found Plaintiff had only "moderate difficulties" with "concentration, persistence or pace," finding that he "report[ed] managing his medications and finances, following written and spoken instructions and using public transportation" (Tr. 19, 210, 212, 297-98). The ALJ concluded Plaintiff does not meet the "paragraph C" criteria because the record does not indicate "a mental impairment that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause decompensation, or that causes the inability to function outside a highly supportive living arrangement" (Tr. 19).

The ALJ also found Plaintiff was not entirely credible (Tr. 18, 22), stating among other findings that: "[a]lthough the claimant alleges depression and anxiety, he apparently did not seek treatment until May 2013, after hiring his representative in March 2013, which suggests financial motive for his disability claim." (Tr. 18, 20-22, 297).[5] Plaintiff conveyed to Dr. Langford, which the ALJ made note of, that he had "never seen a mental health professional" or "taken any medication for psychiatric conditions" (Tr. 18). Plaintiff does not challenge the ALJ's credibility determination.

---

[5] The SSA published SSR 16-3p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims*, which supersedes and rescinds SSR 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*. SSR 16-3p eliminates use of the term "credibility" from SSA policy as the SSA's regulations do not use this term, and it clarifies that subjective symptom evaluation is not an examination of a claimant's character. *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). SSR 16-3p took effect in March 2016, more than a year after the ALJ issued his decision. Moreover, SSR 16-3p instructs ALJs in accordance with the applicable regulations to consider all of the evidence in the record in evaluating the intensity and persistence of symptoms after finding the claimant has a medically determinable impairment, which is exactly what the ALJ has done in this matter. As such, it is not necessary to determine whether SSR 16-3p applies retroactively. *See Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119, at n.1 (6th Cir. 2016). As the record in this case and much of the existing case law refers to "credibility" evaluations, the Court will occasionally refer to the ALJ's analysis using the same term.

"An ALJ has a duty to develop the record where the evidence suggests that a mental impairment exists." *Brooks v. Astrue*, No. 3:09-CV-432, 2011 WL 652839, at *8 (E.D. Tenn. Jan. 26, 2011), *report and recommendation adopted*, No. 3:09-CV-432, 2011 WL 652837 (E.D. Tenn. Feb. 14, 2011) (citing 20 C.F.R. § 416.927(c)(3)). However, "[a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Id.* (quoting *Foster*, 279 F.3d at 355) (internal quotation marks omitted). Here, the ALJ, for the reasons stated above, properly found that Plaintiff faced no "adaptive functioning deficits" as the result of the estimated impairment in intellectual functioning. Substantial evidence, then, supports the ALJ's determination that IQ testing was unnecessary to conclude that Plaintiff failed to qualify for a mental impairment designation under 12.05C, 12.02, or 12.04.

### C. Whether ALJ Erred by Not Assigning Specific Weight to Each Medical Opinion

Plaintiff also faults the ALJ for "fail[ing] to discuss adequately the weight he assigned to the various psychological experts in determining the RFC," and for "never explicitly stat[ing] the weight he assigned to Dr. Langford" [Doc. 16 at Page ID #699, 704]. Plaintiff maintains this constitutes "reversible error" [*id.* at Page ID #705]. As Defendant points out, "[n]one of Plaintiff's treating providers submitted a 'treating source' opinion" [Doc. 20 at Page ID #727]. Instead, "the record contained opinions from examining and non-examining sources." [*Id.*]. Plaintiff argues that in the absence of a controlling treating source opinion, 20 C.F.R. 1527(e)(2)(ii)[6] requires that "the ALJ must explain in the decision the weight given to the

---

[6] This regulation was updated in March 2017. It now states:

> Evidence from our Federal or State agency medical or psychological consultants. The rules in § 404.1513a apply except that when an administrative law judge gives controlling weight to a treating source's medical opinion, the administrative law judge is

opinion of the . . . State Agency medical or psychological consultant . . . as the ALJ must do for any opinions" [Doc. 16 at Page ID #705].

The ALJ does not specifically designate what specific weight he assigned to the findings of Dr. Langford, an examining source. Defendant argues, however, that "the ALJ reasonably evaluated Dr. Langford's opinion as directed by the regulations." [Doc. 20 at Page ID #729]. Dr. Langford found Plaintiff to have a global assessment of functioning ("GAF") of 50, indicating borderline serious problems (Tr. 19, 299), which the ALJ declined to follow (Tr. 19). Evaluations in August and December 2013 concluded Plaintiff's GAF rating was 55, representing moderate limitations (Tr. 344, 458). The ALJ found the GAF rating of 55 to be more consistent with other evidence in the record (Tr. 18). Specifically, the ALJ said of the GAF score determined by Dr. Langford: "I discredit this as his [Plaintiff's] overall limitations are rated moderate" (Tr. 19). In reaching that conclusion, the ALJ relied in part on Dr. Langford's own findings to determine Plaintiff's "overall limitations" (Tr. 17-19). The ALJ noted Dr. Langford's finding that Plaintiff "appears to be able to follow both simple written and spoken instructions" (Tr. 19, 298) and exhibits "clear and logical thinking" (Tr. 18, 298). The ALJ further noted Plaintiff's admission to Dr. Langford regarding his activities of daily living and self-care, such as wash dishing, vacuuming, sweeping, managing his medications with little to no difficulty, managing his finances with some difficulty, preparing simple meals, and having a driver's license until losing it due to multiple DUIs (Tr. 17-18, 298). Those findings were supported elsewhere in the record (Tr. 98, 101, 209, 357). A State agency psychological consultant and non-examining source, Robert Paul, Ph.D., also had evaluated Plaintiff's claim

---

not required to explain in the decision the weight he or she gave to the prior administrative medical findings in the claim.

20 C.F.R. § 404.1527(e).

(Tr. 89-103). Citing to the Disability Determination Explanation, the ALJ stated: ". . . I am aided by the assessments provided by DDS psychological consultants who found the claimant exhibited no more than 'moderate' limitations due to a mental impairment (Ex. 8A)" (Tr. 19); *see Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013) (an ALJ is "not precluded from relying on the opinion of a non-examining physician"). Dr. Paul, a non-examining source, found through a psychiatric review that Plaintiff had "moderate" restrictions on activities of daily living, "moderate" difficulties in maintaining social functioning, and "moderate" difficulties in maintaining concentration, persistence, or pace (Tr. 94).

Pursuant to 20 C.F.R. § 404.1527(c)(4), the regulations provide that, "Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." Here, the ALJ adequately explained why he declined to adopt the GAF score assessed by Dr. Langford. In doing so, the ALJ relied on Dr. Langford's own findings to develop the record related to Plaintiff's activities of daily living, abilities to follow spoken and written instructions, and Plaintiff's reported medical history (Tr. 17-19). The ALJ recognized an inconsistency between the record as whole and Dr. Langford's conclusion that Plaintiff's GAF score was 50 (Tr. 19). Given Plaintiff's overall abilities and limitations, the ALJ reasoned the GAF score of 55 was more consistent with the record as a whole, adding sufficient justification for that determination. Pursuant to 20 C.F.R. § 404.1527(c)(4), the ALJ's discussion and conclusion regarding Dr. Langford's findings and GAF score were supported by substantial evidence.

The ALJ considered Dr. Langford's finding that Plaintiff had moderate impairment in short-term, long-term, and remote memory functioning and in the ability to sustain concentration, as well as Dr. Langford's finding that Plaintiff may have mild mental retardation

or low intellectual functioning (Tr. 17). The ALJ did note that those findings appear to be based on Plaintiff's "self-reported limitations" (Tr. 17, 297, 295). As previously stated, the ALJ at times questioned Plaintiff's credibility (Tr. 18, 22). Still, the ALJ considered Dr. Langford's finding regarding low levels of intellectual functioning when determining Plaintiff's RFC. The ALJ "careful[ly] considered the entire record" in finding that Plaintiff has the RFC to perform light work "involving simple, routine, repetitive jobs tasks not requiring reading and writing" with "only occasional contact with the public, co-workers, and supervisors[,] and infrequent work changes" (Tr. 20). I **FIND** the ALJ sufficiently explained the degree to which he relied on medical opinion evidence from Dr. Langford in light of the record as whole. 20 C.F.R. § 404.1527(c)(4).

### D. Whether ALJ's Use of Chronological Age Without Explanation Was Error

Citing 20 C.F.R. § 404.1563 and 416.963, the ALJ classified Plaintiff as a "younger individual," stating that Plaintiff was 49 years old on the AOD (Tr. 23). Plaintiff argues that he should have been placed in a higher age category. He challenges the ALJ's categorization of his age stating that he was in a borderline age category and the ALJ provided no explanation of why he was not treated as a being in a higher age category [Doc. 16 at Page ID #709].

"Age" is defined in 20 C.F.R. §§ 404.1563(a) and 416.963(a) as being the claimant's "chronological age." In a disability determination, the Commissioner considers an individual's "chronological age in combination with [a claimant's RFC], education, and work experience." 20 C.F.R. § 404.1563(a) and 416.963(a). Age is a factor in determining an individual's ability to adjust to other work, where "advancing age" is considered "to be an increasingly limiting factor in the person's ability to make such an adjustment." *Id.* Specifically, the regulations make the following distinctions:

(c) Younger person. If you are a younger person (under age 50), we generally do not consider that your age will seriously affect your ability to adjust to other work. However, in some circumstances, we consider that persons age 45–49 are more limited in their ability to adjust to other work than persons who have not attained age 45. See Rule 201.17 in appendix 2 [of subpart P of part 404 of this chapter].

(d) Person closely approaching advanced age. If you are closely approaching advanced age (age 50–54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work.

§§ 404.1563(c)-(d) and 416.963(c)-(d).

The Agency "will not apply the age categories mechanically in a borderline situation." §§ 404.1563(b) and 416.963(b). If a claimant is "within a few days to a few months of reaching an older age category, *and* using the older age category would result in a determination or decision that [the claimant is] disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors" in each case. *Id.* (emphasis added). Though not binding on this Court, the Associate Commissioner of Hearings and Appeals "provides 'guiding principles, procedural guidance and information' to adjudicators and staff of the Office of Hearings and Appeals" known as the Hearings Appeals and Litigation Law Manual of the Social Security Administration (HALLEX). *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397, 399 (6th Cir. 2008), *as amended.* HALLEX I-2-2-42 provides, in part, that a borderline age situation does not exist *if* either (1) the claimant's age is not "within a few days or a few months of the next higher age category" *or* (2) inclusion in the higher age category would not result in a decision of "disabled" instead of "not disabled." HALLEX I-2-2-42, 2016 WL 1167001, at *1.

"Generally, SSA considers a few days to a few months to mean a period not to exceed six months." HALLEX I-2-2-42(B)(1), 2016 WL 1167001, at *1. Here, Plaintiff was born September 26, 1960 (Tr. 53, 240, 285, 295, 301, 306, 578). On the original AOD – May 15,

17

2009 – Plaintiff was 48 years old.  On the amended AOD – March 26, 2010 – he was 49 years and six months old.  By the time of the ALJ hearing, Plaintiff was 54 years old (Tr. 33).  On the AOD, Plaintiff was within six months of reaching the higher age category (Tr. 32).  At age 54, Plaintiff was within the higher age category by the date of the hearing.  Therefore, the first test to determine whether a borderline age situation exists has been met.

To determine if a borderline age situation exists in the current case, the Court next must determine whether "using the older age category would result in a determination or decision that [the claimant is] disabled."  §§ 404.1563(b) and 416.963(b).  The parties disagree on whether that would be the result here.  Plaintiff states that "utilizing the Medical-Vocational Guidelines enumerated in 20 C.F.R. 404, Appendix 2, the ALJ determined a similarly situated individual as Plaintiff who could perform light, unskilled work, would be 'not disabled,' under Medical-Vocational Rule 202.18. (R. 24)."  [Doc. 16 at Page ID #709].  From there, "Plaintiff submits the ALJ erred in applying the Medical-Vocational Rules *mechanically*, given Plaintiff was within the borderline age of an individual Closely Approaching Advanced Age."  [Doc. 16 at Page ID #710] (emphasis added).  Citing 20 C.F.R. Pt. 404, Appx. 2, Plaintiff argues that had the ALJ identified the Plaintiff as an individual closely approaching advanced age *and* had the ALJ identified Plaintiff's past relevant work as "unskilled," then Plaintiff would have been deemed to be disabled pursuant to Medical Vocational Rule 202.09 [*id.*].

Defendant disagrees.  Rule 202.09 applies to individuals who are "illiterate or unable to communicate in English."  Plaintiff claims he is functionally illiterate [Doc. 16 at Page ID #711].  Defendant asserts that because Plaintiff attended formal schooling through at least the sixth grade, Plaintiff is categorized as having "limited education" – defined in 20 C.F.R. §

404.1564(b)(2)[7] – or at least a marginal education – defined in § 404.1654(b)(2)[8] [Doc. 20 at Page ID #736]. The ALJ found Plaintiff "has a limited education and is able to communicate in English" (Tr. 23). At the hearing, Plaintiff responded "no" when asked if he could "read and write if it's simple[.]" (Tr. 34). Plaintiff testified he can "mostly just" write his name (Tr. 38). He testified that he can recognize street signs and certain labels in a grocery store (Tr. 35). A disability report from December 2012 indicated Plaintiff can speak, read and understand English and can write more than just his name in English (Tr. 199). The ALJ found Plaintiff "reported special education classes in school but stated he quit after the seventh grade to go to work and make money" (Tr. 18). Plaintiff himself testified that he quit school in the sixth or seventh grade (Tr. 33). Elsewhere in the record, Plaintiff is said to have either a seventh or eighth grade education (Tr. 33, 201, 296, 289). "A numerical grade level is properly used to determine a claimant's educational abilities only if contradictory evidence does not exist." *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 450 (6th Cir. 1990). To this point, Dr. Langford found Plaintiff "appears able to follow instructions; both very simple written and spoken" and "showed good use of basic vocabulary skills," though he could not solve basic math problems (Tr. 297). The ALJ concluded Plaintiff "has no adaptive functioning deficits," based on Plaintiff's reported

---

[7] 20 C.F.R. § 404.1564(b)(2) provides:

> Marginal education. Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.

[8] 20 C.F.R. § 404.1564(b)(3) provides:

> Limited education. Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade level of formal education is a limited education.

level of activities of daily living and self-care, including the ability to manage his medications and finances (Tr. 17, 298).  While other evidence exists, substantial evidence supports the ALJ's finding that Plaintiff has a "limited education."

Contrary to Plaintiff's assertion, the evidence does not support that the ALJ "appl[ied] the Medical-Vocational Rules *mechanically*" [Doc. 16 at Page ID #710] (emphasis added).  As the ALJ makes clear in his decision, absent an exception, the ALJ uses the Medical-Vocational Rules as only a framework "[w]hen the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations" (Tr. 24).  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2) ("[C]ombinations of nonexertional and exertional limitations . . . cannot be wholly determined under the rules in this appendix 2," and instead "full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor.").

Here, the ALJ found Plaintiff's "severe impairments" include "depression" and "reduced intellectual functioning (estimated)" (Tr. 16).  The ALJ noted "that [i]f the claimant had the [RFC] to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.18.  However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations."  (Tr. 24).  The ALJ then stated that he turned to a VE to determine what positions might be available to Plaintiff with his specific limitations.  (Tr. 24).  At the hearing, the ALJ specifically asked the VE to "comment on the degree to which reading and writing would be required" in the jobs the vocational expert had identified as being available to Plaintiff (Tr. 45).

The VE identified three jobs in the regional and national economies that require no reading or writing – a hand packager, a garment folder, or a stock ticket marker (Tr. 45-46). Defendant asserts that the ALJ adequately considered Plaintiff's difficulties in intellectual functioning, reflecting the same in the Plaintiff's RFC[9] [Doc. 20 at Page ID #736].

Because the ALJ relied on the Medical-Vocational Rules as a *framework*, it was not inevitable that Plaintiff would have met a finding of "disabled" if he was placed in a higher age category. Further, because there was substantial evidence to support the ALJ's finding that Plaintiff "has a limited education and is able to communicate in English" (Tr. 23), the Medical-Vocational Rules would lead to a finding of "not disabled" regardless of whether Plaintiff was designated as a "younger individual" or "individual closely approaching advanced age." *See* 20 C.F.R. Pt. 404, subpt. P, app. 2., §§ 202.10, 202.11, 202.17, 202.18. Therefore, although on the amended AOD Plaintiff was "within a . . . few months of reaching an older age category," the evidence does not establish that "using the older age category would result in a determination or decision that [the claimant is] disabled," and as a result, the regulations did not require the ALJ to "consider whether to use the older age category after evaluating the overall impact of all the factors" in each case. §§ 404.1563(b) and 416.963(b).

Plaintiff takes issue with the fact that "[n]owhere in his decision does the ALJ address or reference the borderline age issue." [Doc. 16 at Page ID #711]. Plaintiff quotes *Bowie.,* 539 F.3d at 400-01 to assert that this omission "may in some cases mean that the ALJ's ultimate

---

[9] Notably, an ALJ's determination to limit a claimant's RFC to jobs that did not require written instruction is not determinative of the claimant's educational level, nor does it serve as *de facto* finding of illiteracy. *Johnson v. Comm'r of Soc. Sec.*, No. 2:15-CV-2622, 2016 WL 3536584, at *6 (S.D. Ohio June 29, 2016), *report and recommendation adopted,* No. 2:15-CV-2622, 2016 WL 3948104 (S.D. Ohio July 19, 2016). "[C]laimants are limited to performing simple tasks without written instructions for reasons other than literacy, such as borderline intellectual functioning or deficits in concentration, persistence, or pace." *Id.* (citing *Jones v. Comm'r of Soc. Sec.*, No. 3:14-cv-1236, 2015 WL 4394423, at *3 (N.D. Ohio July 16, 2015)).

decision is not supported by sufficient evidence." [Doc. 16 at Page ID #710]. The *Bowie* court, however, stated, that although "§ 1563(b) does not impose a *per se* procedural requirement to address borderline age categorization explicitly in every borderline case," still, this "does not relieve ALJs of their obligation to provide enough explanation of their overall disability determinations to assure reviewers that their decisions are supported by substantial evidence." *Bowie*, 539 F.3d at 400 (*see* 42 U.S.C. § 405(g)). In *Bowie*, the Sixth Circuit states as an example that "substantial evidence might be lacking where an ALJ, with no explanation, places a claimant in the 'younger individual' age category who is 49 years and 11 months, unskilled, sedentary, barely literate, and whose only previous work experience was in the fishing industry." *Id.* at 401 (citing Rule 201.18, App. 2 to Subpart P of 20 C.F.R. § 404; HALLEX II-5-3-2). The situation here is distinct from the example provided in *Bowie*. Here, Plaintiff was 49 years and six months at the AOD, had participated in unskilled or semi-skilled work in construction, was capable of light work with limitations, and had a limited education (Tr. 20, 23). Further, the vocational expert found there were jobs that Plaintiff could do in the local and national economy.

I **FIND** no error in the ALJ's use of chronological age.

### E. Whether the ALJ Erred By Misclassifying Plaintiff's Past Relevant Work

Plaintiff takes issue with how the ALJ categorized Plaintiff's past work. Specifically, Plaintiff argues that the ALJ incorrectly identified Plaintiff's past work as a Specific Vocational Preparation ("SVP") SVP4, considered "semi-skilled" under the Dictionary of Occupational Titles ("DOT") rather than an SVP2, which are considered "unskilled." [Doc. 16 at Page ID #705-06]. Plaintiff submits that the ALJ's incorrect identification of Plaintiff's past relevant work "caused irreparable harm as a finding of unskilled past relevant work as opposed to semi-skilled work is directly relevant to the application of the correct Medical-Vocational Guidelines."

[Doc. 16 at Page ID #708]. Defendant states that the ALJ's outcome would remain the same regardless of whether Plaintiff's past work was described as skilled or unskilled [Doc. 20 at Page ID #734].

Because there is substantial evidence to support the ALJ's finding that Plaintiff had a "limited education," then under the Medical Vocational Guidelines, Plaintiff would have met a finding of "not disabled" whether Plaintiff – as either a younger individual or individual closely approaching advanced age – had past work that was deemed as "unskilled or none" (202.17, 202.10) or "skilled or semiskilled (skills not transferrable)" (202.18, 202.11). As stated previously, in this case the ALJ only looked to the Medical Vocational Guidelines as a "framework" (Tr. 24). As a result, even if the ALJ's classification of Plaintiff's past work as an SVP4 was an error, it was harmless.

## V. CONCLUSION

For the foregoing reasons,

    1) Plaintiff's motion for judgment on the pleadings [Doc. 15] is **DENIED**;

    2) The Commissioner's motion for summary judgment [Doc. 19] is **GRANTED**; and

    3) The Commissioner's decision denying benefits is **AFFIRMED**.

SO ORDERED.

ENTER:

s/*Susan K. Lee*
_____
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE